# EXHIBIT A-1

Case 4:22-cv-02416   Document 1-2   Filed on 07/20/22 in TXSD   Page 2 of 16

7/20/2022 3:05 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 66510469
By: Joshua Hall
Filed: 7/20/2022 3:05 PM

CAUSE NO. _____

| | | |
|---|---|---|
| LYTHOU "MELODY" YEO<br>*Plaintiff,* | §<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| vs. | §<br>§<br>§ | HARRIS COUNTY, TEXAS |
| BAYLOR COLLEGE OF MEDICINE<br>*Defendant.* | §<br>§ | \_\_\_\_TH JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION
(WITH REQUEST FOR ASSIGNMENT TO THE 157TH JUDICIAL DISTRICT COURT)

Plaintiff Lythou "Melody" Yeo ("Melody Yeo") files this Original Petition against Baylor College of Medicine ("BCM") and alleges as follows:

## I. REQUEST FOR ASSIGNMENT TO THE 157TH DISTRICT COURT

This lawsuit is being filed consequent to a Rule 202 pre-suit investigation granted by Hon. Tanya Garrison, presiding judge over the 157th District Court. Judge Garrison has been presiding over the Plaintiff and Defendant of this petition since November, 2021. That action has been fraught with contentious motion practice regarding the handling of pre-suit discovery and Judge Garrison has entered a Confidentiality Order that sets forth a process for addressing specific discovery matters. Judge Garrison is familiar with the parties, facts and significant legal issues raised in this matter. In the name of judicial economy, therefore, Plaintiff requests that this lawsuit be assigned to the 157th District Court.

## II. DISCOVERY CONTROL PLAN AND CLAIM FOR RELIEF

1.  Plaintiff intends to conduct discovery under Level 2 pursuant to Rule 190.3 of the Texas Rules of Civil Procedure.

2.  Plaintiff seeks monetary relief over $250,000.00 and but not more than $1,000,000.

## III. JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this case because the amount in controversy exceeds the Court's minimum jurisdictional requirements.

4. Venue is proper in Harris County, Texas, pursuant to TEX. CIV. PRAC. & REM. CODE §15.002 because all or a substantial part of the events or omissions giving rise to the claim occurred in Harris County and this is the of BCM's principal office in this state.

## IV. PARTIES

5. Plaintiff, Melody Yeo, is a resident of Los Angeles, California and submits to the jurisdiction of Harris County, Texas. California drivers license # ... 910; Social Security # ... 248.

6. Defendant Baylor College of Medicine is a nonprofit corporation with a principal place of business in Harris County, Texas. BCM may be served with process by serving its registered agent, James Banfield, Baylor College of Medicine, One Baylor Plaza, Suite 106A, Houston, Texas 77030.

## V. NATURE OF ACTION

7. Plaintiff Melody Yeo ("Ms. Yeo") was subjected to gender discrimination by her former employer, BCM, and retaliated against because she opposed sexual harassment and gender discrimination.

8. Ms. Yeo files statutory claims for employment discrimination and retaliation against Defendant Baylor College of Medicine ("BCM") pursuant to Texas Commission on Human Rights Act ("TCHRA"), codified at Texas Labor Code §21.001 et. seq.

9. One of the acts of retaliation perpetrated by BCM was to refuse Plaintiff the Masters of Science degree that is supported by the work she had completed in pursuing a doctorate. Plaintiff seeks a declaratory judgment that she has completed the requirements for a Masters in Science degree from BCM and requests an order requiring BCM to confer that degree upon her.

10. Plaintiff reserves the right to amend this petition as discovery in this case develops, additional damages are incurred, and/or additional facts are discovered.

## V. Procedural Background

11. On November 19, 2021, Plaintiff filed her petition to take presuit deposition and subpoena documents pursuant to Tex.R.Civ.P. 202.

12. After entry of agreed confidentiality order, evidentiary hearings were held on January 28 and February 18, 2022.

13. The Court granted the Rule 202 petition and ordered the deposition to proceed and documents proceed pursuant to the agreed terms of the confidentiality order.

14. BCM appealed the grant of the presuit investigation and orders relating to bonds and impact on a stay of the investigation pending appeal.

15. Throughout the Rule 202 action, the Plaintiff and her parents have deliberated the enormous decision whether or not to undertake litigation that could expose Plaintiff to rigorous and undeserved attacks on Plaintiff's character and integrity. They have found the conduct of BCM to be so reprehensibly evasive of accountability and responsibility by hiding their conduct rather than airing their procedures, that the decision has been finally made.

16. The filing of this lawsuit effectively moots the appellate action and the Court of Appeals is being notified.

## VI. Material Facts

17. In March 2016, Ms. Yeo moved from Los Angeles to Houston to work in the laboratory of Dr. Tsai and later to become a student of BCM's GSBS in August of that year. She was only nineteen (19) years having completed her undergraduate studies while living at home. As a graduate student, Ms. Yeo was also an employee working in the laboratories of primary researchers,

many of international renown. Dr. Richard Finnell ("Finnell") headed the last laboratory ("Finnell Lab") where she worked before being dismissed and terminated from BCM. He had transferred to BCM from the University of Texas in Austin, bringing with him a graduate student who assumed a recognized senior position in the new lab.

18. Ms. Yeo was assigned to be mentored by a graduate student who had asked Dr. Finnell for that assignment. He guided her in the routines and standards of the Finnell Lab as well as helped her with her studies. Over the course of a couple of months, he used his senior status to change the nature of what had become a friendship and initiate, manipulate, and pressure Ms. Yeo into a sexual relationship that she, as a lesbian, did not want.

### Ms. Yeo Seeks Help from BCM

19. In February, 2019, Ms. Yeo met with BCM's Ombuds counselor to seek guidance as to how she could extricate herself from this relationship that was becoming more and more controlling and abusive. Efforts to "break up" was met with escalating anger and, ultimately, she was raped on more than one occasion. The Ombuds counselor advised her to not file a complaint with the human resources ("HR") department because BCM would "get rid of the problem" but not actually try to "fix it." The Ombuds urged her to leave the problem with her to solve so that Ms. Yeo would not have to change labs or have her work interrupted.

20. The relationship came to the attention of Finnell in May, 2019, when he inquired why his favored graduate student was in such a bad mood. Ms. Yeo cautiously disclosed just enough of the details of her situation that she believed would bring the help she so desperately needed. Finnell treated the situation dismissively and waved off the graduate student's behavior as "puppy love."

21. A friend of Ms. Yeo's who was witnessing her tearfulness, loss of weight, strained appearance, and fits of trembling, wrote Finnell an accusatory email with demands that Ms. Yeo be

protected. That email was not well-received. That same friend filed another report of sexual harassment with the HR department. Thereafter, Finnell's sympathetic attitude disappeared because of his stated annoyance that her situation had disrupted the Finnell Lab and the progression of thirty-nine (39) years of his life's work. He demanded she, and/or the friend, withdraw the complaint and stop the fuss. Finnell also suggested, threateningly, that he would address her friend's enrollment at the school.

### BCM MANAGES THE COMPLAINT TO TERMINATION / EXPULSION

22. Ms. Yeo was then subjected to an investigation conducted by an attorney who BCM had hired. This attorney concluded and stated in her final report that the timing of Finnell's cancelling Ms. Yeo's attendance at a conference "raises inferences of retaliatory intent" and "[t]here is also corroboration of a possible retaliatory intent. Dr. Finnell says he was upset that Ms. Yeo had raised concerns with the Title IX office. Dr. Finnell admits and evidence supports that Dr. Finnell knew about Ms. Yeo's complaints about [senior male graduate student] at the time Dr. Finnell cancelled her attendance at the conference."

23. In the EEOC process that only got so far as a self-serving position statement from BCM, BCM indicated that it had also taken into account a 2017 sexual harassment incident involving Ms. Yeo. She had been assigned to the lab of Dr. Bertuch, another esteemed researcher, where the lab manager was behaving inappropriately to several females working there. A more senior female graduate student had complained to Dr. Bertuch who subsequently learned that Ms. Yeo was also identified as a victim. Ms. Yeo thereby became a named a complainant in the consequent HR investigation. The summary report accurately stated that several women believed this man did not respect physical boundaries and engaged in come-on communications about girlfriends and sex that was inappropriate. The HR manager who conducted the investigation recommended that the

"department may want to offer [Lab Manager] a refresher course addressing professional boundaries and appropriate conversation in the workplace." That assessment validated the sexual harassment complaints as having foundation. Nevertheless, and despite Dr. Bertuch's cautions to the Lab Manager to stop his behavior, he continued the conduct that so many of the lab's employees had found extremely offensive.

24. With regard to those 2017 reports of sexual harassment, BCM's investigation was so quickly rushed that it determined the other graduate student's complaint was **"unsubstantiated."** The same determination was made with regard to Ms. Yeo. BCM's process entirely failed to take remedial action.

25. Ms. Yeo experienced retaliation and suffered such severe emotional distress that she took a year long hiatus to return home to Los Angeles where she superficially recovered from this traumatic incident. Upon returning to BCM, the prior incident appeared to be the only reason why she was experiencing difficulty in joining another lab. Upon approaching Finnell for a place, he stated that he had been warned about her because the 2017 incident. She had been marked as disruptive and prone to false or exaggerated reports of sexual harassment. Nevertheless, he was willing to give her a "second chance."

26. The lawyer's findings on Ms. Yeo's 2019 report of sexual harassment and assault was submitted in February 2020. Once again, BCM found Ms. Yeo's assertions that the graduate student's conduct in demanding a sexual relationship were not to be believed. HR assumed the position that her initial friendliness waived any right to later complain of subsequent unwelcome conduct. The report concluded, as well, that Finnell's retaliation was **"unsubstantiated."** BCM took the 2017 incident as blanket proof that Plaintiff makes false claims. It was abundantly clear from multiple witnesses that Ms. Yeo avoids confrontation, especially when a male colleague demands

-6-

responsiveness to his attentions. BCM should have gained that understanding from the 2017 incident but, instead, used Ms. Yeo's nature against her to dismiss her legitimate plea for help.

### The Harasser and BCM Complain Against Ms. Yeo

27. Emboldened by this finding, the accused graduate student filed a counter-complaint against Ms. Yeo alleging 1) sexual harassment by making a false accusation of sexual harassment and 2) sexual assault. Both claims were, once again, determined to be **"unsubstantiated."**

28. BCM was not done with Ms. Yeo, however, because during the course of the investigation by the attorney it had hired to investigate her claims, that lawyer identified a provision of BCM's conduct policies that could form the basis for dismissal/termination: lying. Further action was then initiated *against* her, asserting violations of an ethics policy. Ms. Yeo's responses in the investigation had notably accused him of lying yet that complaint was not referred for investigation or potential disciplinary action. Only Ms. Yeo was selected for this additional action that ultimately led to her termination/dismissal.

29. Plaintiff was told on January 24, 2020, that a BCM reviewing committee had recommended to the Dean that Ms. Yeo be dismissed/terminated from employment based on their determination that she had lied about incidents of unwanted sexual interaction with the graduate student. Ms. Yeo exhausted all administrative remedies available to her through several appeals via BCM's procedures and she was notified of her dismissal/termination on April 17, 2020.

### EMPLOYER LIABILITY

30. At all times whenever an employee, supervisor, manager, agent, and/or servant of the defendant corporations performed some act in relation to this lawsuit, such individual was performing acts in such a manner that the defendant is liable for the misconduct of its employee, supervisor, manager, agent and/or servant. Liability is attached to the defendant pursuant to any one of or all of

the following theories of liability:

- a) The employee, supervisor, manager, agent, and/or servant of the defendant performed some act within the scope and course of their employment with the defendant corporations;

- b) Absolute or strict liability as a result of the Hostile Work Environment discrimination/harassment created by the defendant's supervisor and/or manager and/or agent;

- c) The defendant knew or should have known of the discrimination and sexual harassment and failed to take prompt remedial action;

- d) Restatement (Second) of Agency Section 219.  As a result of the servant, employee and/or agent of the defendant being aided in accomplishing the unlawful conduct described, by their agency relationship with the defendant;

- e) Restatement (Second) of Agency Section 219.  As result of the fact that the defendant's supervisor and/or employee and/or manager was vested by the defendant with both actual and apparent authority to alter Plaintiff's employment status.  Plaintiff relied on such authority to her detriment;

- f) As a result of the defendant's ratification of the exercise of authority by its agent and/or supervisor and/or manager in that the defendant expressly ratified such acts.  Further, ratification is inferred by the defendant's failure to investigate, and/or take appropriate remedial action and/or repudiate the acts of its employees, agents, supervisors and/or managers.

- g) Due to the fact that at all times relevant to this lawsuit, Finnell, was performing his duties as managerial employee of the defendant, and had the authority to hire and fire other employees of the defendant.  As a result, the conduct described above constitutes the very acts of the defendant under the doctrine of vice-principal;

- h) As a result of the fact that the defendant owed a non-delegable duty to the Plaintiff to investigate and to take prompt and appropriate remedial action to prevent the sexual harassment and discrimination against its employees and its failure to take such action created a work environment that was substantially certain to cause injury to individuals such as the Plaintiff;

- i) As a result of the acts of a servant of the defendant which are so connected with and grow out of another act of the servant which is imputable to the defendant;

- j) Under the doctrine of respondeat superior;

    k)    As a result of the defendant's failure to have adequate and effective policies and procedures, which would have afforded Plaintiff the protection she needed and was entitled; and/or

    l)    Direct liability as a result of the defendant's own discrimination, harassment, and negligence as the result of one of its employees acting as an agent of the defendant.

## COUNT ONE: DECLARATORY JUDGMENT

31. Ms. Yeo references, relies upon, and incorporates the facts set forth in paragraphs 16 – 28 above as if fully set forth herein.

32. Plaintiff presents a claim under the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code § 37.001 et seq. ("DJA"), asserting that she has completed the work required for a masters degree in science and that she is entitled to degree.

33. Pursuant to Chapter 37.004 of the Tex.Civ.Prac. & Rem. Code, Plaintiff Yeo requests that the Court declare that pursuant to the academic standards of BCM, she has earned the masters in science degree and by injunction order BCM to confer that degree upon her.

34. All conditions precedent to Ms. Yeo's claim for declaratory relief have been performed or have occurred.

## COUNT TWO: DISCRIMINATION

35. Ms. Yeo references, relies upon, and incorporates the facts set forth in paragraphs 16 – 28 above as if fully set forth herein.

36. Plaintiff has satisfied all jurisdictional prerequisites in connection with his claim under the Texas Commission on Human Rights Act ("TCHRA"), TEX. LABOR CODE. §§ 21.001 *et. seq*.

37. Plaintiff is an employee within the meaning of the Texas Labor Code § 21.002(7). See Texas Labor Code § 21.101 and belongs to the class of employees protected under the statute, namely she is female and a member of the LGBTQ community. See Texas Labor Code § 21.051.

-9-

38. Defendant is an "employer" within the meaning of Texas Labor Code § 21.002(8).

39. Defendant intentionally discriminated against Plaintiff in the terms, conditions and privileges of her employment because of her sex in violation of the Texas Labor Code by subjecting her to a hostile working environment and terminating her employment. As a direct and proximate cause of Defendant's conduct, Plaintiff suffered damages.

## COUNT THREE: RETALIATION

40. Ms. Yeo references, relies upon, and incorporates the facts set forth in paragraphs 16 – 28 above as if fully set forth herein.

41. Plaintiff is an employee within the meaning of the Texas Labor Code § 21.002(7). See Texas Labor Code § 21.101.

42. Defendant is an employer within the meaning of Texas Labor Code § 21.002(8).

43. Plaintiff engaged in protected activity when she reported that a graduate student with seniority over her in the Finnell Lab had involved her in an unwanted sexual relationship that she had been trying to extricate herself from.

44. BCM intentionally retaliated against Plaintiff because of her protected activity in violation of the Texas Labor Code by forcing Plaintiff through a manipulated investigatory and appeals process, followed by disciplinary action, and employment termination / school dismissal.

45. As a direct and proximate cause of Defendant's conduct, Plaintiff suffered damages.

## CONDITIONS PRECEDENT / EXHAUSTION OF ADMINISTRATIVE REMEDIES

46. All conditions precedent to filing this suit have been accomplished. Ms. Yeo has timely and fully complied with prerequisites for administrative exhaustion required for jurisdiction in this court under Texas Commission on Human Rights Act of 1983 (TCHRA), *as amended,* TEX.LAB.CODE ANN. §21.001*, et seq.,* and all other conditions precedent to this lawsuit, within the

meaning of Rule 54 of the TEX. R. CIV. PROC., have been performed or have otherwise occurred.

47. Specifically, Plaintiff exhausted all of her administrative remedies before filing this action. Ms. Yeo timely filed her charge of discrimination with the EEOC on July 22, 2020, within 180 days of the acts of which she complains. Under the Work-Sharing Agreement between the EEOC and the Texas Workforce Commission Civil Rights Division ("CRD"), the Charge was deemed to be dually filed with CRD.

48. More than 180 days have elapsed since the filing of her charge of discrimination giving Plaintiff the right to bring suit under Texas Labor Code Chapter 21. *See City of Houston v. Fletcher*, 63 S.W.3d 920, 923 (Tex. App. - Houston [14th Dist. 2002); *Rice v. Russell-Stanley, L.P.*, 131 S.W.3d 510, 513 (Tex. App. - Corpus Christi 2004); *El Paso Cty. v. Kelley*, 390 S.W.3d 426, 430 (Tex. App. - El Paso 2012). Plaintiff timely files this suit before the second anniversary of the filing of the Charge as required by Tex. Lab. Code § 21.256.

49. All conditions precedent to the filing of this action have been fulfilled. To the extent any time limits have not been complied with, same are futile, have been waived, or are tolled on account of agreement and/or fraud, and, in addition, defendants are estopped from asserting same.

## NO FEDERAL CLAIMS

50. Plaintiff Yeo hereby affirmatively states that she does not state any claims arising under any federal laws or statutes in this petition. All of her claims are claims arising out of the Constitution, laws and statutes of the State of Texas.

## PUNITIVE DAMAGES

51. Because BCM has engaged in a discriminatory practice with malice or with reckless indifference to the state-protected rights of an aggrieved individual, plaintiff seeks exemplary damages to the maximum extent permitted by law.

## JURY DEMAND

52.    Plaintiff demands a jury trial on all issues triable to the jury.

## ATTORNEYS FEES

53.    It was necessary for Plaintiff to hire the services of legal counsel to protect her rights. Plaintiff is entitled to an award of attorneys' fees and costs pursuant to Texas Labor Code § 21.259.

54.    Furthermore, Plaintiff is entitled to recover from Defendant the reasonable and necessary attorneys' fees and costs associated with prosecuting is claim for declaratory judgment pursuant to Texas Civil Practice and Remedies Code § 37.009.

55.    Defendant should be ordered to pay reasonable and necessary attorneys' fees and expenses through trial and appeal, and a judgment should be rendered in favor of Plaintiff's attorneys and against Defendant; or, in the alternative, Plaintiff requests reasonable and necessary attorneys' fees and expenses through trial and appeal be taxed as costs and be ordered paid directly to Plaintiff's attorneys, who may enforce the order for fees in their own name.

## DAMAGES AND RELIEF SOUGHT

56.    Each of the preceding paragraphs is incorporated herein as if reproduced in full.

57.    As a direct and proximate result of the foregoing, your Plaintiff was caused to suffer injury and resulting damages seeking remedies including, but not limited to, the following:

    a.    Judgment declaring defendants' practices complained of to be in violation of the Texas Commission on Human Rights Act of 1983, *as amended* pursuant to Uniform Declaratory Judgments Act. TEX.CIV.PRAC. & REM. CODE ANN. §37.004;

    b.    Judgment declaring that Plaintiff has completed the requirements for a Masters in Science, meeting the academic standards of Baylor College of Medicine;

      c.    Judgment ordering Baylor College of Medicine to confer upon Plaintiff the degree of Masters in Science;

      d.    Back pay and employment benefits, past and future pursuant to TEX.LAB.CODE ANN. §21.258;

      e.    Injunctive relief of reinstatement or front pay, loss of earnings and earning capacity, and employment benefits in the future, if reinstatement is deemed not practical or possible, including benefits to make Plaintiff whole, i.e., to provide the monies and benefits that she would have received but for Defendant's unlawful actions against her. TEX.LAB.CODE ANN. §21.258;

      f.    Permanent injunction, enjoining BCM, its agents, employees, successors, assigns and all persons in active concert or participation with them, from retaliating against Plaintiff in violation of the Texas Commission on Human Rights Act of 1983, *as amended*;

      g.    Mental/emotional anguish, inconvenience, anxiety, loss of enjoyment of life, shame, embarrassment, humiliation, loss of sleep, anxiety, loss of career, injury to reputation and the like, past and future; TEX.LAB.CODE ANN. §21.2585;

      h.    Punitive damages assessed against Defendant because it engaged in a discriminatory practice with malice or reckless indifference to the state-protected rights of Plaintiff TEX.LAB.CODE ANN. §21.2585;

      i.    Any other injunctive and equitable relief to which she is entitled;

      j.    Costs and attorney's fees against Defendant as provided by TEX. LAB. CODE ANN. §21.259 and/or TEX. CIV.PRAC.& REM. CODE ANN. §37.009, incurred in obtaining relief and pursing this action;

      k.    Pre-judgment and post-judgment interest at the rates established under the Texas Finance Code, §304.001;

      l.    An order that Baylor College of Medicine take such other and further actions as may be necessary to redress Defendant's violation of the TCHRA; and

      m.    Any such other and further relief to which Plaintiff may be justly entitled.

58.    Plaintiff has no adequate remedy at law to correct all the wrongs complained of, and this suit for declaratory and injunctive relief, in addition to monetary damages, is her only means of securing relief. Further, Plaintiff will continue to suffer irreparable injury from defendant's policies,

practices, customs, and usages set forth herein.

## DEPOSITION NOTICE OF MONICA GARCIA

59. Plaintiff intends to notice the deposition of Monica Garcia, the Rule 202 intended deponent and will arrange the date, time, and place for her deposition at the opening of the discovery period in this litigation as the first step in that process.

## PRAYER

WHEREFORE, premises considered, Plaintiff Yeo respectfully prays that BCM be cited to appear and answer herein and that upon a final hearing of this action, judgment be entered for Yeo against BCM for damages in an amount within the jurisdictional limits of this Court, which shall include all above mentioned damages and any other relief, at law or in equity, to which Yeo may be entitled.

ARMSTRONG & ASSOCIATES

By: _/s/ Jacqueline A. Armstrong_
Jacqueline A. Armstrong
State Bar No. 01329990
440 Louisiana St. Ste 900
Houston, Texas  77002
Tel: 713-960-6646
Fax: 713-766-5020
jarmstrong@armstrongatlaw.com

**ATTORNEY FOR PLAINTIFF
LYTHOU "MELODY" YEO**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jacqueline Armstrong on behalf of Jacqueline Armstrong
Bar No. 01329990
jarmstrong@armstrongatlaw.com
Envelope ID: 66510469
Status as of 7/20/2022 3:20 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jacqueline A.Armstrong | | jarmstrong@armstrongatlaw.com | 7/20/2022 3:05:26 PM | SENT |