IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JANE DOE, | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION NO. 4:22-CV-2416 |
| vs. | § | -------------------------------------------- |
| | § | Jury Demanded |
| BAYLOR COLLEGE OF MEDICINE, | § | |
| *Defendant.* | § | |

## PLAINTIFF DOE'S FIRST AMENDED COMPLAINT
### with Motion for Deposition of Monica Garcia

Plaintiff Jane Doe amends her complaint, subject to and without waiving her previously filed motion to remand, as a matter of course pursuant to Federal Rules of Civil Procedure ("FED.R.CIV.P.") 15(a)(2), within twenty-one (21) days of Baylor College of Medicine's ("BCM") motion to dismiss under FED.R.CIV.P. 12(b)(1) and 12 (b)(6).

## JURISDICTION AND VENUE

1.       BCM removed this case to federal court pursuant to 28 U.S.C. § 1332, claiming diversity jurisdiction.  The removal was filed within hours of Doe filing a Petition on July 20, 2022.  Plaintiff has filed a motion to remand on the grounds that 1) the Fifth Circuit will not support removal filed by forum-defendant, 2) at least one defendant must be properly "joined and served" prior to removal and BCM, as the only defendant, was not, and 3) the removal was untimely.  Doe does not waive her motion to remand, timely-filed on August 19, 2022.

2.      Venue is proper in Harris County, Texas, pursuant to TEX. CIV. PRAC. & REM. CODE §15.002 because all or a substantial part of the events or omissions giving rise to the claim occurred in Harris County and this is the of BCM's principal office in this state.

## PARTIES

3.      Plaintiff,  Doe, is a resident of Los Angeles, California.

4.      Defendant Baylor College of Medicine is a nonprofit corporation with a principal place of business in Harris County, Texas. BCM was served with process by serving its registered agent, James Banfield, Baylor College of Medicine, One Baylor Plaza, Suite 106A, Houston, Texas 77030, on August 16, 2022.

## NATURE OF ACTION

5.      Plaintiff Doe ("Doe") was employed by BCM from March, 2016, through May, 2020, initially to work for Dr. Francis Tsai in his laboratory months prior to beginning her studies.  Below is an image of one of her paychecks that she received bi-monthly reflecting pay at an hourly rate of $14.42.



2

6. Doe was sexually harassed and assaulted by a coworker in the laboratory of Dr. Richard Finnell, where they both worked. Doe was thereby subjected to gender discrimination and sexual harassment by her former employer, BCM while performing her job duties. She was then retaliated against because she opposed that conduct. All conduct complained of occurred within and arose from the employment relationship.

7. Doe files statutory claims for employment discrimination and retaliation against Defendant Baylor College of Medicine ("BCM") pursuant to Texas Commission on Human Rights Act ("TCHRA"), codified at Texas Labor Code §21.001 et. seq.

8. Doe was terminated from employment on April 17, 2020, in retaliation for opposing the harassment at work. Her last paycheck was issued on May 1, 2020:



9.      Doe remained unemployed until November, 2020, because of the shock and trauma caused by the retaliatory termination and expulsion.  She seeks recovery of backpay for those six months at the rate of $1,288.446 as reflected in the above pay advice.  BCM damaged Doe in her education out of retaliation for her employment complaint.

10.     BCM also retaliated against Doe for opposing sexual harassment in the workplace by expelling her from the school.  Another act of retaliation was to refuse Plaintiff the Masters of Science degree that is supported by the work she had completed in pursuing a doctorate.  Plaintiff conveyed that specific request to BCM in August, 2021, and through its counsel on August 16, 2021, BCM further retaliated by expressly stating that it would not confer that degree.

11.     To rectify the damage resulting from her opposition to sexual harassment in her place of work, Plaintiff seeks a declaratory judgment that she has completed the requirements for a Masters in Science degree from BCM and requests a mandatory injunction requiring BCM to confer that degree upon her. Section 21.258 authorizes "additional equitable relief as may be appropriate," not limited by any other section of the statute.

12.     Only BCM can confer this degree. Her alternative is to repeat the years of education she received at BCM from April, 2016 through April 2020, at great cost, further delaying her ability to earn the income that a holder of a Masters in Science or

Doctorate degree would earn.  A monetary recovery for all of those expenses (relocation, tuition, costs, travel, etc.) that she would need to pay in order to achieve the master's degree (again), would not fully remedy the harm BCM's unlawful conduct inflicted.

13.    Plaintiff reserves the right to amend this petition as discovery in this case develops, additional damages are incurred, and/or additional facts are discovered.

## PROCEDURAL BACKGROUND

14.    On November 19, 2021, Plaintiff initiated this civil action by filing a petition to take presuit deposition and subpoena documents pursuant to TEX.R.CIV.P. 202.

15.    After entry of agreed confidentiality order, evidentiary hearings were held on January 28 and February 18, 2022.

16.    The Court granted the Rule 202 petition and ordered the deposition to proceed and documents proceed pursuant to the agreed terms of the confidentiality order.

17.    BCM appealed the grant of the presuit investigation and orders relating to bonds and impact on a stay of the investigation pending appeal.

18.    Throughout the Rule 202 action, the Plaintiff and her parents have deliberated the enormous decision whether or not to undertake litigation that could expose Plaintiff to rigorous and undeserved attacks on Plaintiff's character and

integrity. They have found the conduct of BCM to be so reprehensibly evasive of accountability and responsibility by hiding their conduct rather than airing their procedures, that the decision has been finally made.

19.     July 22, 2022, was the deadline for filing the petition pursuant to the statute of limitations, compelling the action to convert to litigation.

20.     The filing of this lawsuit effectively mooted the appellate action and the Court of Appeals dismissed the appeal.

21.     Defendant BCM removed this action on July 20, 2022, within hours of Doe's petition being filed.

## MATERIAL FACTS

22.      In March 2016, Doe moved from Los Angeles to Houston to work in the laboratory of Dr. Francis Tsai and later to become a student of BCM's GSBS in August of that year. She was only nineteen (19) years having completed her undergraduate studies while living at home.

23.     As a graduate student, Doe was also an employee working in the laboratories of primary researchers, many of international renown. Dr. Richard Finnell ("Finnell") headed the last laboratory ("Finnell Lab") where she worked before being dismissed and terminated from BCM. He had transferred to BCM from the University of Texas in Austin, bringing with him a graduate student who assumed a recognized senior position in the new lab.

24.     A graduate student who had worked with Dr. Finnell at the University of Texas and who moved with him to BCM, headed the lab. He asked Finnell to mentor Plaintiff Doe.  He guided her in the routines and standards of the Finnell Lab as well as helped her with her studies.  Over the course of a couple of months, he used his senior status to change the nature of what had become a friendship and initiate, manipulate, and pressure Doe into a sexual relationship that she, as a lesbian, did not want.  The older student would penetrate Doe with sex toys while at work and out of sight in one of the laboratory rooms.

## Doe Seeks Help from BCM

25.     In February, 2019, Doe met with BCM's Ombuds counselor to seek guidance as to how she could extricate herself from this relationship that was becoming more and more controlling and abusive. Efforts to "break up" was met with escalating anger and, ultimately, she was raped on more than one occasion. The Ombuds counselor advised her to not file a complaint with the human resources ("HR") department because BCM would "get rid of the problem" but not actually try to "fix it." The Ombuds urged her to leave the problem with her to solve so that Doe would not have to change labs or have her work interrupted.

26.     The relationship came to the attention of Finnell in May, 2019, when he inquired why his favored graduate student was in such a bad mood. Doe cautiously disclosed just enough of the details of her situation that she believed would bring the

help she so desperately needed. Finnell treated the situation dismissively and waved off the graduate student's behavior as "puppy love."

27.     A friend of Doe's who was witnessing her tearfulness, loss of weight, strained appearance, and fits of trembling, wrote Finnell an accusatory email with demands that Doe be protected. That email was not well-received. That same friend filed another report of sexual harassment with the HR department.  Thereafter, Finnell's sympathetic attitude disappeared because of his stated annoyance that her situation had disrupted the Finnell Lab and the progression of thirty-nine (39) years of his life's work. He demanded she, and/or the friend, withdraw the complaint and stop the fuss. Finnell also suggested, threateningly, that he would address her friend's enrollment at the school.

## BCM Manages the Complaint to Termination/ Expulsion

28.     Doe was then subjected to an investigation conducted by an attorney who BCM had hired.  This attorney concluded and stated in her final report that the timing of Finnell's cancelling Doe's attendance at a conference "raises inferences of retaliatory intent" and "[t]here is also corroboration of a possible retaliatory intent. Dr. Finnell says he was upset that Doe had raised concerns with the Title IX office. Dr. Finnell admits and evidence supports that Dr. Finnell knew about Doe's complaints about [senior male graduate student] at the time Dr. Finnell cancelled her attendance at the conference."

29.     In the EEOC process that only got so far as a self-serving position statement from BCM, BCM indicated that it had also taken into account a 2017 sexual harassment incident involving Doe.  She had been assigned to the lab of Dr. Bertuch, another esteemed researcher, where the lab manager was behaving inappropriately to several females working there. A more senior female graduate student had complained to Dr. Bertuch who subsequently learned that Doe was also identified as a victim.  Doe thereby became a named a complainant in the consequent HR investigation. The summary report accurately stated that several women believed this man did not respect physical boundaries and engaged in come-on communications about girlfriends and sex that was inappropriate. The HR manager who conducted the investigation recommended that the "department may want to offer [Lab Manager] a refresher course addressing professional boundaries and appropriate conversation in the workplace." That assessment validated the sexual harassment complaints as having foundation. Nevertheless, and despite Dr. Bertuch's cautions to the Lab Manager to stop his behavior, he continued the conduct that so many of the lab's employees had found extremely offensive.

30.     With regard to those 2017 reports of sexual harassment, BCM's investigation was so quickly rushed that it determined the other graduate student's complaint was **"unsubstantiated."**  The same determination was made with regard to Doe.  BCM's process entirely failed to take remedial action.

9

31.    Doe experienced retaliation and suffered such severe emotional distress after the 2017 incident, that she took a year long hiatus to return home to Los Angeles where she superficially recovered from this traumatic incident. Upon returning to BCM, the prior incident appeared to be the only reason why she was experiencing difficulty in joining another lab. Upon approaching Finnell for a place, he stated that he had been warned about her because the 2017 incident.  She had been marked as disruptive and prone to false or exaggerated reports of sexual harassment. Nevertheless, he was willing to give her a "second chance," a decision he later told Doe he had regretted once the complaint to HR had been made.

32.    On receiving the complaint about Doe's sexual harassment in 2019, once again, BCM found Doe's assertions that the graduate student's conduct in demanding a sexual relationship were not to be believed.  HR assumed the position that her initial friendliness waived any right to later complain of subsequent unwelcome conduct. HR employee, Monica Garcia, witnessed HR staff, including the investigator of the Bertuch Lab sexual harassment, state that Doe was lying because she did the same before in 2017. This predetermined decision persisted through the remainder of the process to address the sexual harassment and retaliation Doe was suffering.

33.    Monica Garcia also observed a pattern of addressing HR complaints that favored outcomes preferred by the department heads or equivalent like Finnell. Finnell's animosity toward Doe was substantial and included demands that she

withdraw the complaint, he canceled her participation in a conference, and expelled her first from his lab. The animosity of supervisors for complainants of code violations is not uncommon.   Complainants are deemed troublemakers and disruptions.   Doe experienced this animosity from Finnell.   Her experience comports with Monica Garcia's observations and reports of HR's deference, to the detriment of employees and students, to management. Garcia gathered documents and observations and wrote reports to the General Counsel as a whistleblower represented by counsel. She was terminated in retaliation.

34.     The lawyer's findings on Doe's 2019 report of sexual harassment and assault was submitted in February 2020. The report concluded, as well, that Finnell's retaliation was **"unsubstantiated."**   BCM took the 2017 incident as blanket proof that Plaintiff makes false claims. It was abundantly clear from multiple witnesses that Doe avoids confrontation, especially when a male colleague demands responsiveness to his attentions. BCM should have gained that understanding from the 2017 incident but, instead, used Doe's nature against her to dismiss her legitimate plea for help.

## The Harasser and BCM Complain Against Doe

35.     Emboldened by this finding, the accused graduate student filed a counter-complaint against Doe alleging 1) sexual harassment by making a false accusation of sexual harassment and 2) sexual assault. Both claims were, once again, determined to be **"unsubstantiated."**

36.     BCM was not done with Doe, however, because during the course of the investigation by the attorney it had hired to investigate her harasser's claims, that lawyer identified a provision of BCM's conduct policies that could form the basis for dismissal/termination: lying. Further action was then initiated *against* her, asserting violations of an ethics policy. Doe's responses in the investigation had notably accused him of lying yet that complaint was not referred for investigation or potential disciplinary action. Only Doe was selected for this additional action that ultimately led to her termination/dismissal.

37.     Plaintiff was told that a BCM reviewing committee had recommended to the Dean that Doe be dismissed/terminated from employment based on their determination that she had lied about incidents of unwanted sexual interaction with the graduate student. Doe exhausted all administrative remedies available to her through several appeals via BCM's procedures and she was notified of her dismissal/termination on April 17, 2020.

## EMPLOYER LIABILITY

38.     At all times whenever an employee, supervisor, manager, agent, and/or servant of the defendant corporations performed some act in relation to this lawsuit, such individual was performing acts in such a manner that the defendant is liable for the misconduct of its employee, supervisor, manager, agent and/or servant. Liability is attached to the defendant pursuant to any one of or all of the following theories:

a)      The employee, supervisor, manager, agent, and/or servant of the defendant performed some act within the scope and course of their employment with the defendant corporations;

b)      Absolute or strict liability as a result of the Hostile Work Environment discrimination/harassment created by the defendant's supervisor and/or manager and/or agent;

c)      The defendant knew or should have known of the discrimination and sexual harassment and failed to take prompt remedial action;

d)      Restatement (Second) of Agency Section 219.  As a result of the servant, employee and/or agent of the defendant being aided in accomplishing the unlawful conduct described, by their agency relationship with the defendant;

e)      Restatement (Second) of Agency Section 219.  As result of the fact that the defendant's supervisor and/or employee and/or manager was vested by the defendant with both actual and apparent authority to alter Plaintiff's employment status.  Plaintiff relied on such authority to her detriment;

f)      As a result of the acts of a servant of the defendant which are so connected with and grow out of another act of the servant which is imputable to the defendant;

g)      As a result of the defendant's ratification of the exercise of authority by its agent and/or supervisor and/or manager in that the defendant expressly ratified such acts.  Further, ratification is inferred by the defendant's failure to investigate, and/or take appropriate remedial action and/or repudiate the acts of its employees, agents, supervisors and/or managers.

h)      As a result of the defendant's failure to have adequate and effective policies and procedures, which would have afforded Plaintiff the protection she needed and was entitled;

i)      Direct liability as a result of the defendant's own discrimination, harassment, and negligence as the result of one of its employees acting as an agent of the defendant.

j)     Due to the fact that at all times relevant to this lawsuit, Finnell, was performing his duties as managerial employee of the defendant, and had the authority to hire and fire other employees of the defendant. As a result, the conduct described above constitutes the very acts of the defendant under the doctrine of vice-principal;

k)     As a result of the fact that the defendant owed a non-delegable duty to the Plaintiff to investigate and to take prompt and appropriate remedial action to prevent the sexual harassment and discrimination against its employees and its failure to take such action created a work environment that was substantially certain to cause injury to individuals such as the Plaintiff; and/or

l)     Under the doctrine of respondeat superior.

## COUNT ONE: DECLARATORY JUDGMENT / INJUNCTIVE REMEDY

39.    Doe references, relies upon, and incorporates the facts set forth in paragraphs 22 – 37 above as if fully set forth herein.

40.    Plaintiff presents a claim under the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code § 37.001 et seq. ("DJA"), asserting that she has completed the work required for a masters degree in science and that she is entitled to degree.  If this case is not remanded to state court with the grant of Plaintiff's Motion to Remand, then this declaratory judgment action is converted to one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

41.    Pursuant to Chapter 37.004 of the Tex.Civ.Prac. & Rem. Code, or possibly 28 U.S.C. §2201, Plaintiff Doe requests that the Court declare that pursuant to the academic standards of BCM, she has earned the masters in science degree.

14

42.     Upon rendering that decision and declaring Doe entitled to the Master's degree, Doe asks the Court to exercise its equitable powers to order the degree to actually be conferred upon her.

43.     A monetary award for the lost income she has lost since expulsion with a lesser earning capacity is an inadequate remedy going forward. To earn a living at the rate of income she would as a holder of a masters degree requires that she be awarded that degree. She should not be required to repeat years of education. Doe is available for students who complete the course work and pass the qualifying exam.  Doe can prove that she has done both.

44.     All conditions precedent to Doe's claim for declaratory relief have been performed or have occurred.

## COUNT TWO:   DISCRIMINATION

45.     Doe references, relies upon, and incorporates the facts set forth in paragraphs 22 – 37 above as if fully set forth herein.

46.     Plaintiff has satisfied all jurisdictional prerequisites in connection with his claim under the Texas Commission on Human Rights Act ("TCHRA"), TEX. LABOR CODE. §§ 21.001 *et. seq*.

47.     Plaintiff is an employee within the meaning of the Texas Labor Code § 21.002(7). See Texas Labor Code § 21.101 and belongs to the class of employees

protected under the statute, namely she is female and a member of the LGBTQ community. See Texas Labor Code § 21.051.

48.    Defendant is an "employer" within the meaning of Texas Labor Code § 21.002(8).

49.    Defendant intentionally discriminated against Plaintiff  in the terms, conditions and privileges of her employment because of her sex in violation of the Texas Labor Code by subjecting her to a hostile working environment and terminating her employment.  As a direct and proximate cause of Defendant's conduct, Plaintiff suffered damages.

50.    Without adequate or respectful inquiry, BCM disregarded the proclaimed sexual orientation of Plaintiff that would have established that the sexual demands of the harasser were unwanted.

51.    Doe was also subjected to vile sexual harassment and assaults by a supervising employee within the lab where she worked. She overcame her aversion to causing disruption and lack of faith that BCM would remedy her painful and frightening situation, and sought help. BCM ignored her. This sexual harassment that BCM so badly responded to violates the TCHRA prohibitions on the basis of gender.

## COUNT THREE: RETALIATION

52.    Doe references, relies upon, and incorporates the facts set forth in paragraphs 22 – 37 above as if fully set forth herein.

53.     Plaintiff is an employee within the meaning of the Texas Labor Code § 21.002(7). See Texas Labor Code § 21.101.

54.     Defendant is an employer within the meaning of Texas Labor Code § 21.002(8).

55.     Plaintiff engaged in protected activity when she reported that a graduate student with seniority over her in the Finnell Lab had involved her in an unwanted sexual relationship that she had been trying to extricate herself from.

56.     BCM intentionally retaliated against Plaintiff because of her protected activity in violation of the Texas Labor Code by forcing Plaintiff through a manipulated investigatory and appeals process, followed by disciplinary action, employment termination, school dismissal, and refusal to award her the Masters Degree in science that is available to students who meet the requirements for a masters degree.

57.     As a direct and proximate cause of Defendant's conduct, Plaintiff suffered damages.

## CONDITIONS PRECEDENT
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

58.     All conditions precedent to filing this suit have been accomplished. Doe has timely and fully complied with prerequisites for administrative exhaustion required for jurisdiction in this court under Texas Commission on Human Rights Act of 1983 (TCHRA), *as amended,* TEX.LAB.CODE ANN. §21.001, *et seq.,* and all other conditions

precedent to this lawsuit, within the meaning of Rule 54 of the T<small>EX</small>. R. C<small>IV</small>. P<small>ROC</small>., have been performed or have otherwise occurred.

59.     Specifically, Plaintiff exhausted all of her administrative remedies before filing this action.  Doe timely filed her charge of discrimination with the EEOC on July 22, 2020, within 180 days of the acts of which she complains. Under the Work-Sharing Agreement between the EEOC and the Texas Workforce Commission Civil Rights Division ("CRD"), the Charge was deemed to be dually filed with CRD.

60.     More than 180 days have elapsed since the filing of her charge of discrimination giving Plaintiff the right to bring suit under Texas Labor Code Chapter 21. *See City of Houston v. Fletcher*, 63 S.W.3d 920, 923 (Tex. App. - Houston [14th Dist. 2002). Plaintiff timely files this suit before the second anniversary of the filing of the Charge as required by Tex. Lab. Code § 21.256.

61.     All conditions precedent to the filing of this action have been fulfilled.  To the extent any time limits have not been complied with, same are futile, have been waived, or are tolled on account of agreement and/or fraud, and, in addition, defendants are estopped from asserting same.

## EGGSHELL PLAINTIFF

62.     Under black letter Texas law, a defendant takes a plaintiff as he finds her. In the instant case, defendant must accept Plaintiff Doe in the condition in which she was. As such plaintiff relies on the eggshell plaintiff doctrine.

## No Federal Claims

63.     Plaintiff Doe hereby affirmatively states that she does not state any claims arising under any federal laws or statutes in this petition. All of her claims are claims arising out of the Constitution, laws and statutes of the State of Texas. Plaintiff maintains her state declaratory judgment action, recognizing it is converted should the federal court deny remand.

## Punitive Damages

64.     Because BCM has engaged in a discriminatory practice with malice or with reckless indifference to the state-protected rights of an aggrieved individual, plaintiff seeks exemplary damages to the maximum extent permitted by law.

## Attorneys' Fees

65.     It was necessary for Plaintiff to hire the services of legal counsel to protect her rights. Plaintiff is entitled to an award of attorneys' fees and costs pursuant to Texas Labor Code § 21.259.

66.     Furthermore, Plaintiff is entitled to recover from Defendant the reasonable and necessary attorneys' fees and costs associated with prosecuting is claim for declaratory judgment pursuant to Texas Civil Practice and Remedies Code § 37.009. A federal declaratory judgment may not include an award of attorney fees.

67.    Defendant should be ordered to pay reasonable and necessary attorneys' fees and expenses through trial and appeal, and a judgment should be rendered in favor of Plaintiff's attorneys and against Defendant; or, in the alternative, Plaintiff requests reasonable and necessary attorneys' fees and expenses through trial and appeal be taxed as costs and be ordered paid directly to Plaintiff's attorneys, who may enforce the order for fees in their own name.

## JURY DEMAND

68.    Plaintiff demands a jury trial on all issues triable to the jury.

## DAMAGES AND RELIEF SOUGHT

69.    Each of the preceding paragraphs is incorporated herein as if reproduced in full.

70.    As a direct and proximate result of the foregoing, your Plaintiff was caused to suffer injury and resulting damages seeking remedies including, but not limited to, the following:

      a.    Judgment declaring defendants' practices complained of to be in violation of the Texas Commission on Human Rights Act of 1983, *as amended* pursuant to Uniform Declaratory Judgments Act. TEX.CIV.PRAC. & REM. CODE ANN. §37.004 or 28 U.S.C. §2201;

      b.    Judgment declaring that Plaintiff has completed the requirements for a Masters in Science, meeting the academic standards of Baylor College of Medicine or 28 U.S.C. §2201;

c. Judgment ordering Baylor College of Medicine by mandatory injunction to confer upon Plaintiff the degree of Masters in Science;

d. Back pay and employment benefits, past and future  pursuant to Tex.Lab.Code Ann. §21.258;

e. Injunctive relief of reinstatement or front pay, loss of earnings and earning capacity, and employment benefits in the future, if reinstatement is deemed not practical or possible, including benefits to make Plaintiff whole, i.e., to provide the monies and benefits that she would have received but for Defendant's unlawful actions against her. Tex.Lab.Code Ann. §21.258;

f. Permanent injunction, enjoining BCM, its agents, employees, successors, assigns and all persons in active concert or participation with them, from retaliating against Plaintiff in violation of the Texas Commission on Human Rights Act of 1983, *as amended*;

g. Mental/emotional anguish, inconvenience, anxiety, loss of enjoyment of life, shame, embarrassment, humiliation, loss of sleep, anxiety, loss of career, injury to reputation and the like, past and future; Tex.Lab.Code Ann. §21.2585;

h. Punitive damages assessed against Defendant because it engaged in a discriminatory practice with malice or reckless indifference to the state-protected rights of Plaintiff Tex.Lab.Code Ann. §21.2585;

i. Any other injunctive and equitable relief to which she is entitled;

j. Costs and attorney's fees against Defendant as provided by Tex. Lab. Code Ann. §21.259 and/or Tex. Civ.Prac.& Rem. Code Ann. §37.009, incurred in obtaining relief and pursing this action;

k. Pre-judgment and post-judgment interest at the rates established under the Texas Finance Code, §304.001;

l. An order that Baylor College of Medicine take such other and further actions as may be necessary to redress Defendant's violation of the TCHRA; and

m.      Any such other and further relief at law or equity to which Plaintiff may be justly entitled.

71.     Plaintiff has no adequate remedy at law to correct all the wrongs complained of, and this suit for declaratory and injunctive relief, in addition to monetary damages, is her only means of securing relief.  Further, Plaintiff will continue to suffer irreparable injury from defendant's policies, practices, customs, and usages set forth herein.

## MOTION FOR DEPOSITION OF MONICA GARCIA

72.      Plaintiff requests the Court to permit the deposition of Monica Garcia, the Rule 202 intended deponent, and upon grant of this request will arrange the date, time, and place for her deposition.  Plaintiff further asks the Court to order Defendant and its counsel to cease and desist from tampering with this witness by threatening criminal action which is not permitted pursuant to the federal Defense of Trade Secret Act.

## PRAYER

WHEREFORE, premises considered, Plaintiff Doe respectfully prays that BCM be answer herein and that upon a final hearing of this action, judgment be entered for Doe against BCM for damages in an amount within the jurisdictional limits of this Court, which shall include all above mentioned damages and any other relief, at law or in equity, to which Doe may be entitled.

ARMSTRONG & ASSOCIATES

By:    */s/ Jacqueline A. Armstrong*
      Jacqueline A. Armstrong
      State Bar No. 01329990
      440 Louisiana St. Ste 900
      Houston, Texas  77002
      Tel: 713-960-6646
      Fax: 713-766-5020
      jarmstrong@armstrongatlaw.com

**ATTORNEY FOR PLAINTIFF
JANE DOE**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been served on August 26, 2022 through the electronic court system on the defendant by and through the following counsel of record:

Katherine E. Flanagan        Eric Vinson
Urvashi Morolia             Littler Mendelson, P.C.
Erin McNamara             100 Congress Avenue, Ste. 1400
Littler Mendelson, P.C.     Austin, Texas 78701
1301 McKinney Street, Ste. 1900
Houston, Texas 77010

      */s/ Jacqueline A. Armstrong*
      Jacqueline A. Armstrong