# EXHIBIT   6



| Policy Type | ☐ New Policy   ☒ Revision |
|---|---|
| Policy Number | 02.2.26 |
| Policy Category | Human Resources |
| Effective Date (previous version) | April 2, 2015 |
| Last Update (effective date of revision) | September 28, 2016 |

## Sexual Misconduct and Other Prohibited Conduct Policy

### Type

**Academic (relates to academic affairs generally, faculty and/or student affairs)**

### I. Rationale

The purposes of this Policy are to: 1) define Prohibited Conduct for Baylor College of Medicine (BCM or College) Community Members, 2) establish mechanisms for reporting alleged violations of this Policy, 3) describe BCM's centralized investigation and adjudication procedures, and 4) describe the range of disciplinary actions and remedies applicable to violations of this Policy.

### II. Stakeholders Affected by this Policy

This Policy applies to BCM Community Members only.

### III. Definitions

***BCM Community Members*** – includes the BCM Board of Trustees, faculty, staff, residents/fellows, postdoctoral trainees, and students enrolled in all schools and programs.

***Coercion*** – unreasonable pressure for sexual activity. Coercive behavior is determined based on the type of pressure an individual uses to gain Consent from another person.

***Complainant*** – a person who is alleged to have experienced an incident of Prohibited Conduct.

***Consent*** – the clear, knowing, active and voluntary permission by a person of legal age to participate in sexual contact or sexual activity. Consent can be given by words or actions as long as those words or actions create mutually understood clear permission regarding an individual's willingness to engage in and the conditions of the sexual contact or sexual activity. Consent is not passive; silence in and of itself cannot be interpreted as Consent. Consent to any one form of sexual contact or sexual activity does not automatically imply Consent to any other form of sexual activity, and Consent in any particular instance may not be inferred solely from Consent given in previous instances.

***Dating Violence*** – violence committed by one person against another who is or has been in a dating relationship. A dating relationship is defined by the Texas Family Code as a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature. The existence of such a relationship is based on consideration of: (1) the length of the relationship; (2) the nature of the relationship; and (3) the frequency of interactions between persons involved in the relationship. Examples of Dating Violence include but are not limited to sexual abuse, physical abuse, or the threat of such abuse.

# EXHIBIT 6

BCM [Yeo] 000023

**Domestic Violence** – an act of violence committed by a current or former spouse, intimate partner, domestic partner, co-parent (a person who shares a child in common), person similarly situated to a spouse under the domestic or family violence laws of the State of Texas, or by any other person against an adult or youth who is protected from that person's acts under the domestic or family violence laws of the State of Texas. Examples of Domestic Violence include but are not limited to sexual abuse, physical abuse, or the threat of such abuse.

**Evidence** – information, in whatever form, relevant to a determination of a potential violation of this Policy, regardless of whether such information would be admissible under the Texas or federal rules of evidence.

**Force** – the use of physical violence and/or physical intimidation of an individual to gain sexual access. Force may include threats, intimidation (implied threats), and/or Coercion that diminishes resistance or produces submission or involuntary verbal assent.  The presence of Force is not demonstrated by the absence of resistance; however resistance is a clear indicator of Non-Consensual sexual activity.

**Incapacitation** – a state of mind in which a person cannot make rational, reasonable decisions and lacks the capacity to give knowing Consent for sexual activity.  Incapacitation may result from mental disability, sleep or sleep deprivation, involuntary physical restraint, and/or the consumption of alcohol or other drugs – note that incapacitation from alcohol or drugs is different than mere intoxication.  Sexual activity with an individual that one knows to be, or should know to be, mentally or physically incapacitated constitutes a violation of this Policy. This is an objective standard, determined according to what a reasonable person would do (or not do) under the totality of the circumstances. For instance, a reasonable person would presume that another person is incapacitated and unable to Consent to sexual activity if the person is observed to be unconscious after consuming drugs or alcohol. A reasonable person would also presume that another person who exhibits slurred speech or difficulty walking, performing simple tasks (like opening a door), or remaining alert after consuming alcohol is likewise incapacitated and unable to Consent to sexual activity.

**Intimidation** – verbal threats or acts intended to incite fear of harm.

**Non-Consensual** – without explicit Consent.

**Prohibited Conduct** – means Dating Violence, Domestic Violence, Sexual Assault, Sexual Exploitation, Sexual Harassment, Sexual Misconduct, and Stalking.

**Proceeding** – all activities related to a non-criminal resolution of an allegation of Prohibited Conduct, including but not limited to fact-finding investigations and meetings. Proceeding does not include communications and meetings between BCM administrators only, or between BCM Administrators and Complainants concerning administrative actions or remedies made available prior to adjudication of a report or complaint.

**Reporter** – a person who provides information to BCM regarding an incident of Prohibited Conduct. A Reporter need not be a Complainant.

**Respondent** – a BCM Community Member who is reported to have engaged in Prohibited Conduct.

**Retaliation** – any adverse action threatened or taken against a person, including a Complainant and Reporter, *because* the individual has filed, supported, or provided information in connection with a reported violation of this Policy or engaged in other legally protected activities. Examples of retaliation include but are not limited to: intimidation, threats, and harassment.

**Sexual Assault** (Non-Consensual sexual intercourse or attempted sexual intercourse) – any sexual intercourse or attempted sexual intercourse of a person upon another person however slight, with or without an object, that is without Consent and/or by Force. Examples of Sexual Assault include but are

BCM [Yeo] 000024

not limited to: vaginal or anal penetration by a penis, object, tongue or finger, and oral copulation (mouth to genital contact or genital to mouth contact), no matter how light the penetration or contact.

***Sexual Exploitation*** – Non-Consensual sexual advances of another that do not otherwise constitute one of the other types of Prohibited Conduct defined in this policy. Examples of sexual exploitation include: going beyond boundaries of sexual Consent, prostitution of a person; Non-Consensual photography, video or audio recording of sexual activity; Non-Consensual photography or video of a nude or partially-nude person; Non-Consensual sharing or distribution of a photograph, video or audio recording of sexual activity; voyeurism; knowingly transmitting a sexually transmitted infection (STI) or HIV to another person; exposing one's genitals in Non-Consensual circumstances; exposing another's genitals in Non-Consensual circumstances.

***Sexual Harassment*** - unwelcomed verbal or physical conduct of a sexual nature that is so severe, pervasive or persistent that it interferes with, denies, or limits a person's ability to participate in or benefit from the College's academic environment, educational programs, or activities, and is based on power differentials, quid pro quo, a hostile environment, or retaliation.  Examples of sexual harassment include but are not limited to: attempted coercion of an unwilling person into a sexual relationship or experience; repeated subjection to egregious, unwelcomed sexual attention; punishment in response to a refusal to comply with a sexual request; or conditional benefits that require submission to sexual advances or requests.

***Sexual Misconduct*** (Non-consensual sexual contact or attempted contact) – any intentional sexual touching of a person however slight, with or without an object, that is without Consent and/or by Force. Examples of non-consensual sexual contact may include but are not limited to: intentional contact with the breasts, buttocks, groin or genitals; touching another with any of these body parts, or making another touch themselves, the Respondent, or another person with or on any of these body parts; any intentional bodily contact in a sexual manner, though not involving contact with any previously mentioned body part.

***Stalking*** - engaging in a course of conduct directed at a specific person, which causes that person (or a member of that person's family or household) to fear for his/her safety or the safety of others. Stalking may occur through virtual (e.g. social networks, online forums), electronic (e.g. personal computer, phone, PDA) or physical means. Examples of stalking include: repeatedly following a person, persistent observation of a person in an intimidating manner; acts that threaten or intimidate a person through fear of bodily injury or death of self, or members of that person's family or household; vandalism directed against that person's property.

***Support Person*** - an individual chosen by a Complainant or Respondent, at the Complainant's or Respondent's own expense, to provide support during any meetings related to the investigation and/or adjudication of a reported violation of this Policy. Support Persons will not be directly involved in the investigative process. Complainants and Respondents are expected to speak on their own behalf when providing factual information during the investigative process, and Support Persons are present only to provide assistance or advice to the individual they are supporting. The Support Person may but need not be a licensed attorney and may also speak on behalf of a Complainant or Respondent at any Proceeding to advocate for a Complainant or Respondent.  BCM will not unreasonably delay the investigation and/or adjudication of a reported violation of this Policy due to the unavailability of a selected Support Person. A Support Person who fails to adhere to this Policy or otherwise unreasonably disrupts Proceedings taking place pursuant to this Policy may be instructed to leave the Proceeding by BCM.

## IV. Policy

    **A.** BCM is committed to providing a safe and supportive environment for all BCM Community Members.  Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, prohibits discrimination based on sex in all programs or activities that receive Federal financial assistance.

BCM [Yeo] 000025

Individuals have the right to be free from all forms of sex-based discrimination, including Sexual Misconduct and other Prohibited Conduct defined herein.

**B. Interaction Between this Policy and BCM policy 02.2.25 – Discrimination, Harassment and Retaliation.** BCM Community Members experiencing sex-based discrimination, harassment, or retaliation should also refer to the Discrimination, Harassment and Retaliation Policy (02.2.25), which addresses sexual discrimination that does not constitute Prohibited Conduct as defined in Section C of this Policy, and other forms of discrimination that are prohibited by the University but are not violations of this Policy. If the alleged conduct would be prohibited by the Discrimination, Harassment and Retaliation Policy (02.2.25) and this Policy, this Policy controls.

**C. Prohibited Conduct.** Consistent with BCM's Code of Conduct, BCM Community Members are expected to conduct themselves in a lawful manner that does not infringe on the rights of others. Prohibited Conduct under this Policy includes :
    i.     Dating Violence,
    ii.    Domestic Violence,
    iii.   Sexual Assault,
    iv.    Sexual Exploitation,
    v.     Sexual Harassment,
    vi.    Sexual Misconduct, and
    vii.   Stalking.

BCM encourages Complainants and Reporters to preserve evidence supporting a claim of Prohibited Conduct, and to report incidents or assertions of Prohibited Conduct using the methods described in this Policy.

**D. Privacy Protection for Reporters, Complainants, and Respondents.** BCM strives to comply with the Family Educational Rights and Privacy Act (FERPA) and to safeguard the privacy of any student who makes a report (e.g., Complainant, Reporter), as well as any students named in a report of Prohibited Conduct (e.g., Respondent), to the extent possible. To protect the privacy of all BCM Community Members who may be Reporters, Complainants and Respondents, College administrators (e.g., Title IX Coordinator(s), Security Office personnel, other persons to whom a verbal report of Prohibited Conduct may be made) will take reasonable steps to prevent unauthorized access to verbal and written reports and other written documentation, including interview notes collected during the investigation process. College administrators will share information only on a "need to know" basis, and as required to investigate, adjudicate, and/or implement sanctions arising out of a report.

**E. Reporting Prohibited Conduct to the College.**
    i.    Voluntary Reporting by Anyone Who Suffers a Violation of the Policy. Any person who believes they have experienced Prohibited Conduct is encouraged but not required to report the Prohibited Conduct to the Title IX Coordinator or Security Office. Although this policy does not apply to patients of the BCM Faculty Group Practice, or guests or invitees of the College, all allegations of Prohibited Conduct committed against such persons by BCM Community Members will be investigated to the extent possible and adjudicated in accordance with this Policy.

    ii.   Duty to Report to the Title IX Coordinator.
          • Students and trainees with knowledge of an incident or assertion of Prohibited Conduct are strongly encouraged to report such conduct immediately using reporting options described below (see Section F).

          • All faculty and staff with knowledge of an incident or assertion of Prohibited Conduct must report such conduct, which means that a faculty or staff member who either witnesses an incident of Prohibited Conduct or is informed about an incident of Prohibited Conduct outside of a patient encounter (and not during the

BCM [Yeo] 000026

<mark>provision of medical or mental health services) must report the same to the Title IX Coordinator using traditional or anonymous reporting (see Section F.i-F.ii).</mark>

- o   For example, during a career-mentoring session a faculty member receives a verbal report of Prohibited Conduct from a trainee who does not want to report the incident to the BCM Security Office or to any other College office—the faculty member must nevertheless report it to the Title IX Coordinator.

- Relevant provisions of the Health Insurance Portability and Accountability Act (HIPAA) require healthcare providers who receive a report of Prohibited Conduct during the provision of clinical services to a BCM Community Member to maintain confidentiality. Thus faculty and staff providing medical and mental health services are not obligated under this policy to report Prohibited Conduct discovered during the provision of those services to the Title IX Coordinator, but may have a duty to report to the College or state licensing authorities under another BCM policy or other applicable laws, regulations, or standards (see Sections E(ii) and F).

iii.   <u>Security Office Reporting.</u> BCM security personnel are available to help Reporters and Complainants evaluate their options and contact the appropriate law enforcement agency.  Such personnel also may take reasonable steps to create a safe environment while investigation is pending, such as no-contact orders and changes to work or academic environments, where appropriate (for example, increased security patrol around a Complainant's worksite after an allegation of Stalking; see ). Also, if Prohibited Conduct occurs on campus, Reporters and Complainants may contact the BCM Security Office directly for help 24 hours a day, seven days a week. Administrators in the Security Office are required to report incidents and allegations of Prohibited Conduct to the Title IX Coordinator.

- Anyone experiencing an on-campus emergency may call extension 8811 (713-798-8811)
- For non-emergency assistance, please call BCM Security Office at extension 8-3000 (713-798-3000).

**F.   Options for Reporting Prohibited Conduct to the College.** Regardless of whether reporting is voluntary or compulsory, BCM strongly encourages prompt reporting of Prohibited Conduct and offers three reporting options: traditional, confidential, and anonymous.

i.   <u>Traditional Reporting to the College: Filing a Complaint</u>
Individuals who have experienced Prohibited Conduct may report by filing a complaint with the BCM Title IX Coordinators, or the Security Office (see Section E above). Complaints to the College can be made even if police conclude there is insufficient evidence for criminal charges, or the Complainant does not want to participate further in the College's investigation process. Online complaints may be filed through the Integrity Hotline, and complaints may otherwise be filed in-person, through interoffice mail, U.S. Mail, or email to:

| Title IX Coordinator | Mikiba W. Morehead, M.A. Office of Institutional Diversity and Inclusion | mikiba.morehead@bcm.edu BCM Cullen 415A Mail Stop: BCM 119 (713) 798-8137 |
|---|---|---|
| Deputy Title IX Coordinator | Sandra Dunn, M.S.W. Office of Human Resources Team Lead, Employee Relations | sadunn@bcm.edu Suite OW100 Mail Stop: BCM 325 (713) 798-5886 |

BCM [Yeo] 000027

    ii.  <u>Anonymous Reporting to the College</u>
Individuals who do not have a duty to report under this Policy and who wish to remain anonymous may report by telephone or in writing via the Integrity Hotline phone or web portals. All reports and complaints of Prohibited Conduct are forwarded to the Title IX Coordinators for processing. BCM takes seriously and investigates all reports received, however the continuing anonymity of the Reporter may hinder the results of the investigation and the College's ability to stop the behavior, remedy its effects, and prevent recurrence.
- Integrity Hotline: 855-764-7292 or https://secure.ethicspoint (Enter "Baylor College of Medicine" as the Organization Name)

    iii.  <u>Confidential Reporting within the College</u>
Confidential reporting means that the information provided will not be shared with anyone else, including the Title IX Coordinator(s), without the Consent of the Complainant. Confidential reporting does not constitute legal notice to BCM that this policy may have been violated, and as a result, the College will not investigate or take any action in response to confidential reports. BCM offers the following confidential services:
- For confidential discussion and healthcare services, consult:
  - Student and House Staff Mental Health Service: 713-798-4881 or student-help@bcm.edu
  - Wellconnect (students only): 866-640-4777 or http://www.wellconnectbysrs.com
  - Employee Assistance Program (EAP) 713-500-3008 or 866-893-3776 (EAP resources are for faculty/staff only)
- For confidential discussion only, consult the Office of the Ombudsman.
  - The BCM Ombudsman is a resource who provides confidential discussion of any BCM-related concern, including interpersonal conflict or misunderstandings, and academic or administrative concerns. Please consult the Office of the Ombudsman: Structure, Function, and Resources Policy (32.1.01) for more information.
  - Phone: (713) 798-5039
  - Email: ombudsoffice@bcm.edu
  - Website: https://www.bcm.edu/ombuds

**G. Reporting Prohibited Conduct to State Licensing Authorities.** Section E (above) is not intended to address reporting to state licensing authorities, and does not limit or mitigate the obligation of licensed healthcare providers to make a report to the appropriate licensing board as required by relevant state law(s), specialty-specific rules of professional conduct, or other BCM policies (e.g., the Texas Medical Board mandates reporting of Prohibited Conduct by physicians). If any BCM Community Member is suspected of or found to have violated this policy, and such suspicion or violation triggers mandatory reporting to a state licensing authority pursuant to applicable laws, regulation, standards, or other BCM policies, then a licensed individual with knowledge may report the same as required by the applicable authority.

**H. Retaliation.** BCM will not tolerate Retaliation in response to or in connection with any report of Prohibited Conduct, and may impose interim or permanent sanctions against individuals who retaliate in violation of this Policy. Any party who believes that he/she has experienced Retaliation should report the incident immediately to either or both BCM Title IX Coordinators identified in this Policy. Upon notice of alleged Retaliation, the College will take necessary steps to provide a safe learning and working environment, in accordance with the BCM Code of Conduct (31.1.01) and Integrity Hotline Policy (31.2.02).

**I. Interim Administrative Action & Remedial Measures.** BCM reserves the right to undertake any action it deems necessary to ensure the safety of BCM Community Members in response to a

BCM [Yeo] 000028

report or complaint of Prohibited Conduct, including interim measures to ensure safety of all parties after a report has been made and while an investigation or adjudication process may be pending.  Such measures may include, but are not limited to:

    i.    <u>Administrative Action</u>
- Administrative leave, temporary removal from the BCM community, or temporary removal from College duties pending the conclusion of an investigation and adjudication of the report;
- Issuance of a timely community notification by the BCM Security Office;
- Issuance of a No Contact Order.

    ii.    <u>Remedies</u>
- Relocation of work, academic or extracurricular activities,
- Arranging for a Complainant or Respondent to have the ability to make-up lost work or academic progress without penalty,
- Arranging for a Complainant or Respondent to withdraw from a course without penalty,
- Providing access to counseling, medical and/or academic support services,
- Conducting educational programs or trainings for BCM community members.

**J. Schedule for Policy Review and Update.** This Policy shall be reviewed and revised as necessary, but at least every 2 years.

## V. Responsibilities

**A. Title IX Coordinator.**
    i.    The Title IX Coordinator is the designated administrator who monitors compliance with this Policy, including but not limited to training, education, prevention efforts, communication with stakeholders, and oversight of investigation and adjudication procedures for all reported policy violations.
    ii.    The Title IX Coordinator is also the official designated by BCM to coordinate the College's efforts to comply with its obligations regarding sex-based discrimination. Students, postdoctoral trainees, residents, fellows, faculty, and staff who may be experiencing sex or gender discrimination, harassment, or retaliation should consult 02.2.25 – Discrimination, Harassment and Retaliation for further information and remedies. Any questions about BCM's compliance with these rules and policies should be directed to the Title IX Coordinator.

**B. Title IX Deputy Coordinator & BCM Security Office.**
    i.    The Title IX Coordinator and Deputy Coordinator are responsible for receiving and investigating complaints of Prohibited Conduct.
    ii.    The Title IX Coordinator will have continued communication with the Deputy Coordinator, officials in the Security Office, and the Office of the General Counsel on investigations, remedies, education and reporting.  Statistical and programmatic information will be provided to the BCM Security Office for annual Clery Reporting and inclusion in the Annual Security Report (ASR).
    iii.    Although Coordinators will work together to ensure community member compliance during investigations, create adequate remedies, and facilitate education and reporting across the College, specific responsibilities of the Deputy Coordinator include but are not limited to overseeing compliance efforts of a specific school/area/population, providing ongoing training, consultation, and communication to that population, implementing associated procedures, and other duties as requested by the Title IX Coordinator.

BCM [Yeo] 000029

## VI. Procedures for Implementation and Review

**A. Investigation & Adjudication Procedures.** All reports of Prohibited Conduct are investigated and resolved according to the procedures outlined below. Once an investigation has concluded, BCM may take administrative action, including issuance of sanctions or remedies. If a Complainant or Respondent is dissatisfied with the outcome of an investigation, he or she may proceed with adjudication and petition for appeal.

   i.   Standard of Proof. All investigations and adjudications conducted pursuant to this Policy will apply the "more likely than not" standard (50.1%), which requires that the Evidence supporting a finding of responsibility be more convincing than the information in opposition to it. Individuals are presumed not to have engaged in a violation of this Policy unless or until this standard is met.

   ii.  Procedures

   1)  After receiving a report of alleged Prohibited Conduct, the Title IX Coordinator will conduct an initial evaluation of the allegation to assess the need for interim administrative action and/or interim remedial measures.

   2)  The Title IX Coordinator will conduct a preliminary inquiry of the report to determine if, based on the information provided, there is reasonable cause to indicate that further investigation is warranted.

   a.  If the Title IX Coordinator determines there is no reasonable cause for further investigation, then he/she may impose or provide interim or permanent administrative measures or remedies, or take no further action, as is warranted under the circumstances.

   b.  If the Title IX Coordinator determines there is reasonable cause for further investigation, the Title IX Coordinator will assign a trained Title IX Investigator to investigate the allegation. The Title IX Investigator is a neutral fact-finder, and does not advocate for the College, Complainant or Respondent.

   3)  Complainant and Respondent will receive simultaneous written notice of the initiation of an investigation, notice indicating the Policy provisions alleged to have been violated, and information about applicable rights and available resources.

   4)  Complainant and Respondent have the ability to have a Support Person present throughout the process and during any meetings related to the investigation and/or adjudication of a report of Prohibited Conduct.

   5)  Generally, BCM will strive to complete investigations within thirty (30) days of a report or complaint of Prohibited Conduct to the College. BCM will use its best efforts to investigate all reports of Prohibited Conduct, but unavailability of witnesses or any refusal by the Complainant, Respondent or Reporter to provide relevant information may impede or undermine BCM's ability to produce a complete and thorough investigation. To the extent possible, investigation will include interviews with individuals, including the Complainant, Respondent and witnesses, and confirmation or examination of relevant evidence. Delays to the investigation will be communicated in writing to both Complainant and Respondent.

   6)  Once the investigation is complete, the Investigator will prepare a written report of the investigation. The investigation report will include a statement of the allegation(s), the persons involved, a summary of the evidence reviewed, factual findings, and a determination by the Investigator(s) as to whether the Policy has been violated.

   7)  The Title IX Coordinator will review and then accept or reject the investigation report. Rejected investigation reports may result in the initial report reentering the Investigation process, as outlined in this Policy, although the Title IX Coordinator will assign an alternate trained Investigator to complete the second

investigation. Accepted investigation reports are used in adjudication, which may lead to appropriate sanctions or remedies, if warranted.

8) The Title IX Coordinator will provide simultaneous written notice of adjudication to Complainant and Respondent, including a summary of the Investigator's findings, determination(s), notice of any sanctions and remedies imposed by the Coordinator, and a clear deadline for requesting an appeal (e.g., date, time).

9) Complainant and Respondent each have three (3) days from the date of receipt of the notice of adjudication to decide whether to accept its stated findings, sanctions, and remedies, or to request an appeal. However, the Title IX Coordinator may modify the response period on a case-by-case basis at his/her discretion, taking into account all relevant facts.   Complainant and Respondent must state their position, in writing, to the Title IX Coordinator.

   a. If Complainant and Respondent both choose to accept, then the findings and imposed sanctions and/or remedies will be implemented immediately.

   b. If either Complainant or Respondent chooses not to accept, then the dissenting party may request an appeal according to the procedures described in this Policy.

   c. All requests for appeal must be submitted directly to the Title IX Coordinator prior to the deadline stated in the notice of adjudication, or the appeal will be denied.

iii.  **Participation of Support Persons.** In the event that a Complainant or Respondent elects to have a Support Person present during a Proceeding, the Title IX Coordinator or designee must notify the Office of the General Counsel (OGC) and provide the opportunity for an OGC representative to attend the Proceeding. If the Support Person is not a licensed attorney, the OGC representative's participation is limited to observation.

iv.  **Decorum in Proceedings.** Anyone participating in any Proceeding arising out of an alleged violation of this policy is expected to exhibit civility and decorum commensurate with the serious subject matter, and the Title IX Coordinator has the authority and discretion to remove any participant who fails to adhere to this standard of conduct.

**B. Appeal of Adjudications.**

i.  There is one centralized appeal procedure for all stakeholders contesting a notice of adjudication. All sanctions or remedies imposed due to violations of this Policy (i.e., findings of responsibility for engaging in Prohibited Conduct) may be appealed using this procedure, which supersedes procedures for appeal described in other BCM policies with respect to grievances and adverse actions arising out of Prohibited Conduct. Appeal procedures described in the following policies may not be used to contest remedies, sanctions, or findings of responsibility imposed by the Title IX Coordinator or designee: 02.5.25 - Faculty Grievance Procedures, 02.5.26 - Staff Grievance Procedure, 27.4.12 – Resident & Fellow Grievances, 23.1.08 – Student Grievances, and 27.6.2 - Appeal of Adverse Actions.

ii.  **Scope of Appeal.** Appeals are intended to afford Complainant and Respondent the opportunity to ensure that procedures described in this Policy are performed consistently and documented correctly. Appeals are not intended for use as a substitute adjudication process, and therefore Complainant and Respondent may not pursue appeals based on mere disagreement with adjudication findings or sanctions. Valid grounds for appeal are described below.

iii.  **Requests for Appeal.** Complainant and/or Respondent may request an appeal in writing to the Title IX Coordinator within three (3) days of the date they receive written notice of adjudication. Requests can be submitted online or via email, interoffice mail, or postal service.  ***A request for appeal must be based on at least one of the following grounds, or the request for appeal will be denied***:

BCM [Yeo] 000031

- A *substantial deviation from the procedures outlined in this Policy* which substantially affected the outcome of the case;
- Discovery of *new evidence, unknown or unavailable during the investigation*, which could substantially impact the finding and/or sanctions. "Substantially impact" means a shift in the weight of the evidence sufficient to result in a different or wholly opposite outcome, i.e., the evidence strongly indicates alternate findings and/or sanctions. A summary of this new evidence and its potential impact must be included;
- The *sanctions imposed are disproportionate given both the severity of the Prohibited Conduct proven and a consideration of previous Respondent conduct* (e.g., documented in personnel file or academic record).

iv.    Appeal Procedure. Except where newly discovered evidence is the basis for the appeal, appeals are limited to a review of the Evidence and written documentation created and acquired during the investigation and adjudication (e.g., investigation report, notice of adjudication) and documentation supporting the grounds for appeal. Appeals are not a full re-investigation of the allegation (i.e., *de novo*).

1) The party requesting appeal must show that at least one of the grounds for appeal has been met in order for the Title IX Coordinator to approve the request.

   a. If the Title IX Coordinator determines none of the grounds for appeal have been plausibly asserted, then the request will be denied and the original finding and/or sanctions will take effect immediately.

   b. If the Title IX Coordinator determines at least one of the grounds for appeal has been plausibly asserted, then the request will be approved and follow the procedures described in this Policy.

   c. If the Title IX Coordinator determines that there are valid grounds for appeal based on new evidence that was unknown or unavailable during the original investigation, then the request will be approved and will follow the procedures described in this Policy. It is within the Coordinator's discretion to reconsider previous findings in light of the new evidence, or direct an Investigator to gather additional information and produce an addendum to the original report prior to reconsideration.

2) If the requested appeal meets the standards set forth in the previous section, the non-appealing party will receive written notice that a request for appeal has been approved. The notice must include the grounds for appeal, a copy of the request, and a clear deadline for submitting a written response. The non-appealing party will have three (3) days from the date of notice to submit a written response to the Title IX Coordinator.

3) A three-member appeal panel made up of trained representatives from The Office of Human Resources, the Office of the Provost, and the Faculty Senate will have seven (7) days to render a decision after receiving appeal documents which may include but are not limited to the initial report of Prohibited Conduct, investigation report, approved request for appeal, and non-appealing party's response. If the appeal is based on new evidence, the Title IX Coordinator must submit a written statement to the panel based on reconsideration of new evidence and/or additional investigation, as well as a copy of any addendum(s) made to the Investigator's original written report.

4) The appeal panel has the ability to:

   a. Affirm the findings, sanctions, and/or remedies imposed during adjudication;

   b. Modify the sanctions and/or remedies imposed during adjudication;

   c. Remand the case to the Title IX Coordinator with corrective instructions to address the procedural deviations, which could include a new investigation;

BCM [Yeo] 000032

       d. In the event of new evidence, accept and affirm findings, sanctions and/or remedies;

       e. In the event of new evidence, modify finding(s) based on the standard of proof and remand to the Title IX Coordinator for new sanctions.

    v.   <u>Notice of Appeal Decision</u>. Complainants and Respondents will receive simultaneous written notice of the decisions of the appeal panel which will take effect immediately. The decision of the appeal panel is final and is not subject to any further review.

**C. Sanctions for Violations of this Policy**

    i.   Respondents found to have engaged in Sexual Assault will be removed from the BCM community, i.e., employees will be terminated and students and trainees will be dismissed.

    ii.   Respondents who are found to have engaged in other Prohibited Conduct may face any one or more of the following sanctions, depending on the severity of the reported incident and consideration of any previous policy violations:

- Mandatory educational programs (e.g., sexual harassment education seminar),
- Mandatory training programs (e.g., sensitivity training),
- Issuance of a No Contact Order,
- School and/or program-specific disciplinary action, including but not limited to:
  - o Formal Warnings, and
  - o Adverse Actions, e.g., probation, suspension, non-reappointment, failure to promote, dismissal;
- Administrative leave of absence;
- Restriction(s) on or removal from a work, academic, or extracurricular activity, duty or environment;
- Employment-specific disciplinary action, including but not limited to:
  - o Verbal or written warning,
  - o Probation, and
  - o Termination of employment.

## VII. Stakeholder Compliance

BCM Community Members who violate this Policy by engaging in Prohibited Conduct or acts of retaliation will face disciplinary action, which may include loss of some or all privileges associated with enrollment, training, or employment, or removal of College duties or honors.

## VIII. Tools

**A. Resources.** If you believe you have suffered a violation of this Policy, or know someone who has, resources for affected individuals are available here: https://www.bcm.edu/titleIX

**B. Options for Reporting Prohibited Conduct to Outside Entities.** Reporting of Prohibited Conduct to outside entities is completely voluntary for anyone who has suffered a violation of this Policy, regardless of whether the individual is a student, postdoctoral trainee, resident/fellow, faculty member, staff member, trustee, or invitee. A Reporter may choose to notify authorities including law enforcement, state agencies, and federal agencies.

    i.   <u>Law Enforcement Reporting</u>

- BCM strongly encourages anyone who believes they have knowledge of a crime to make a report to law enforcement. If notified, law enforcement officials may

BCM [Yeo] 000033

assist persons in obtaining orders of protection, restraining orders or other court orders.
- *In the case of an emergency, call the police at 911.*

    ii.   <u>State Agency Reporting</u>
- Texas Medical Board (TMB)
  - o Complaints about physicians, as well as other licensees and registrants of the TMB, including physician assistants, acupuncturists, and surgical assistants may be reported for investigation at the following address: Texas Medical Board Attention: Investigations 333 Guadalupe, Tower 3, Suite 610 P.O. Box 2018, MC-263 Austin, Texas 78768-2018.
  - o Assistance in filing a complaint is available by calling the following telephone number: 1-800-201-9353
  - o For more information please visit: www.tmb.state.tx.us

- Texas Workforce Commission
  - o By virtue of their status as paid employees of BCM, members of the BCM community may report Prohibited Conduct at:

    Texas Workforce Commission, Civil Rights Division
    101 East 15th St., Room 144T
    Austin, TX 78701
    Phone: 512-463-2642 or 888-452-4778
    800-735-2989 (TDD)
    http://www.twc.state.tx.us/crd/file_emp.html

    iii.   <u>Federal Agency Reporting</u>
- By virtue of their status as paid employees of BCM, members of the BCM community may also contact the following sources to report Prohibited Conduct:
  - o U.S. Equal Employment Opportunity Commission (EEOC)
    207 S. Houston Street, 3rd Floor
    Dallas, Texas 75202
    Phone: 800-669-4000
    Fax: 214-253-2720

  - o U.S. Department of Education's Office for Civil Rights (OCR), a federal agency responsible for enforcing Title IX. Information on filing an OCR complaint can be found at: http://www2.ed.gov/about/offices/list/ocr/docs/howto.html?src=rt.

## IX. Related Policies

BCM Code of Conduct
02.2.25 – Policy Regarding Harassment, Discrimination and Retaliation
02.5.26 – Staff Grievance Procedures
02.5.25 – Faculty Grievance Procedures
23.1.08 – Student Grievances
27.4.12 – Grievances
27.6.1 - Adverse Actions Definition
27.6.2 - Appeal of Adverse Actions
31.2.02 – Integrity Hotline Policy: Reporting Improper Activity or Wrongdoing
32.1.01 – Office of the Ombudsman: Structure, Function, and Resources

BCM [Yeo] 000034

## X. Applicable Laws, Regulations & Standards

Title VII of the Civil Rights Act of 1964
Title IX of the Education Amendments of 1972 (Title IX) 20 U.S.C. § 1681 *et seq*; 34 C.F.R. Part 106 (as amended)
The 2013 Reauthorization of the Violence Against Women Act and the Campus Sexual Violence Elimination Act, **Section 304**
Not Alone White House Task Force Report, 2014
Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act

BCM [Yeo] 000035